IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALOMA BLAKE, *an individual, and on behalf of minor child R.R.*, RUSSELL ROBERTSON *an individual*,

    Plaintiffs,

 v.

WASHINGTON COUNTY, and DR. BRUCE CHAMBERS *individually and in his official capacity as court appointed psychological evaluator*,

    Defendants.

10cv0793
**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

Plaintiff, Russell Robertson, filed this civil rights lawsuit essentially claiming his First and Fourteenth Amendment rights were violated when Defendant, County of Washington, prevented him from having contact with his son, R.R. for a prolonged duration. Plaintiff, Aloma Blake, R.R.'s paternal grandmother and legal guardian, has filed the same claims on R.R.'s behalf.[1] The Plaintiffs also brought pendant state tort law claims against Defendant, Dr. Bruce Chambers, a court-appointed psychologist, for allegedly failing to submit psychological evaluations of the parties involved in an underlying state court custody dispute over R.R.

Shortly after filing their Complaint, the Defendants[2] filed a Motion to Dismiss under F.R.Civ.P. 12(b)(5) and 12(b)(6). Doc. no. 11. In response to the Motion, Plaintiffs filed an

---

1 During the initial case management conference, Plaintiffs' counsel represented that Plaintiff, Aloma Blake, was not asserting any *in loco parentis* claims and counsel indicated that he would file a Stipulation to that effect. As of the date of this Memorandum Opinion, no such Stipulation has been filed. However, in Plaintiffs' Brief in Response to the Motion to Dismiss the Second Amended Complaint, Plaintiffs reiterated, "[t]he claims are made on behalf of [Russell] Robertson and R.R." Doc. no. 24, p. 1. Therefore, the Court accepts Plaintiffs' counsel's representations on the matter for purpose of this Opinion.

2 Initially, the Complaint named Children and Youth Services of Washington County, Dr. Bruce Chambers, and Jeff Felton as Defendants.

Amended Complaint which resolved some of the issues raised by Defendants in their Motion to Dismiss.³ Doc. No. 17. Subsequent to the filing of the Amended Complaint, this Court held a case management conference with counsel for the parties and during that conference openly, and in a detailed manner, discussed the outstanding issues which Plaintiff's Amended Complaint failed to address.

Plaintiffs indicated a willingness to file a Second Amended Complaint to clarify its claims and fully address the outstanding matters raised by Defendant's Motion to Dismiss. This Court then issued its Case Management Order (doc. no. 18) requiring Plaintiffs to submit a Second Amended Complaint, and Plaintiffs did so in a timely fashion. Doc. no. 21.

Defendants timely filed the instant Motion to Dismiss Plaintiffs' Second Amended Complaint under F.R.Civ.P. 12(b)(6). Defendants predicate their Motion on three grounds: (1) Plaintiffs' Second Amended Complaint fails to allege the existence of an unconstitutional custom or policy on the part of Defendant, Washington County, thereby requiring the dismissal of Plaintiffs' §1983 claims; (2) the on-going state court custody proceedings present this Court with grounds to abstain under Younger v. Harris, 401 U.S. 37 (1971); and (3) Plaintiffs' Second Amended Complaint must be dismissed pursuant to the Rooker-Feldman doctrine because Plaintiffs are essentially attempting to re-litigate in federal court the factual and legal determinations made by the state court in the underlying child custody and welfare proceedings.

Because this Court will grant the Motion to Dismiss on the first ground, *i.e.* Plaintiffs' failure to allege the existence of an unconstitutional custom or policy on the part of Defendant, Washington County, this Court will not address the Younger abstention, nor the Rooker-Feldman

---

3 For example, the Plaintiffs withdrew all claims against former Defendant, Jeff Felton, eliminating him as a party,

arguments.

## I. Standard of Review

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 at 570). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Id. at 1949. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.' " Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555). In deciding a motion to dismiss, a court must determine whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." PA Prison Soc. v. Cortes, 622 F.3d 215, 233 (3d Cir. 2010), citing Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

As explained succinctly by the United States Courts of Appeals for the Third Circuit:

---

but continued to assert claims against Defendant Children and Youth Services of Washington County.

> Pursuant to Ashcroft v. Iqbal, [citation omitted], district courts must conduct a two-part analysis when presented with a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). "First, the factual and legal elements of a claim should be separated." Id. "The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " Id. at 211 (quoting Iqbal, 129 S.Ct. at 1950).

Edwards v. A.H. Cornell and Son, Inc., 610 F.3d 217, 219 (3d Cir. 2010).

When determining whether a plaintiff has met the second part of the analysis and presented facts sufficient to show a "plausible claim for relief," the Court must consider the specific nature of the claim presented and the facts pled to substantiate that claim. For example, in Fowler, a case predicated upon a violation of the Rehabilitation Act, the Court of Appeals determined that "[t]he complaint pleads how, when, and where [the defendant] allegedly discriminated against Fowler." 578 F.3d at 212. The Court, while noting that the Complaint was "not as rich with detail as some might prefer," it the "how, when and where" provided by the plaintiff sufficient grounds to establish plausibility. Id. at 211-212.

The Court of Appeals in Guirguis v. Movers Specialty Services, Inc., 346 Fed.Appx. 774, 776 (3d Cir. 2009), a civil rights and Title VII case, affirmed a decision to dismiss a plaintiff's complaint because the plaintiff failed to plead facts explaining why he believed his national origin was the basis for the termination of his employment .

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), the district court should apply the following rules. The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. We may not dismiss a complaint

4

merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Id. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short, the motion to dismiss should not be granted if plaintiff alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8. Generally speaking, a complaint that provides adequate facts to establish "how, when, where, and why" will survive a motion to dismiss. See Fowler and Guirguis, supra.

It is on this standard that this Court has reviewed Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.

## II. Background

The parties are familiar with the facts of the underlying state court custody and welfare proceedings. Because of the parties' familiarity, and because Plaintiffs' Second Amended Complaint totals 156 paragraphs in length and 116 of those paragraphs detail the underlying state court custody and welfare proceedings (see, doc. no. 21), this Court will not recite in detail the underlying facts.[4]

In summary, Plaintiffs' Second Amended Complaint essentially alleges that Washington County, through its political subdivision, Washington County Child, Youth and Family Services ("CYS"), improperly prevented Plaintiff Roberston from having contact with his son, R.R., for

---

4 The length of the Second Amended Complaint was due (in part) to the length of the history among the parties. As indicated by Plaintiffs in their Brief in Opposition to the instant Motion to Dismiss, the Second Amended Complaint recited this factual history to provide this Court with "background information to inform the Court of the history of the parties" (doc. no. 24, p. 3), and this Court understood the information as such.

nearly three years.[5] See, doc. no. 21, ¶¶ 8, 11. However, the Second Amended Complaint avers that on January 31, 2007, Plaintiff Robertson signed an agreement presented to him by a CYS worker indicating he would "stay away" from his children while CYS conducted a 60-day investigation into allegations of abuse of R.R. Id. at ¶¶ 40-46. According to the Second Amended Complaint, CYS concluded its investigation deemed the allegations of abuse to be unfounded, and established a family service plan enabling Plaintiff Robertson to visit R.R. (Id. at ¶¶ 53-55). Plaintiff Robertson visited twice with R.R. in June of 2007. Id. at ¶65. All additional visits through mid-September of 2007 were cancelled by someone other than Plaintiff Roberston. Id. at ¶¶66, 69. On September 17, 2007, the Washington County Court of Common Pleas entered an Order allowing Plaintiff Robertson to have "fee-based" visitation with his three other children, (id. at ¶¶ 74, 77) but the Second Amended Complaint is silent as to whether, or if, Plaintiff Russell saw R.R.

In May of 2008, R.R. was placed in the custody of the Greensburg YMCA for 30 days pending an investigation into claims of abuse which R.R. asserted against his stepfather (who was living with R.R.'s mother) and/or his mother. Id. at ¶¶ 98-106. On August 5, 2008, an adjudication hearing for R.R. was held (because R.R. ran away from his mother's home shortly after his release from the Greensburg YMCA and remained at large for 5 weeks), resulting in R.R.'s placement at Auberle for eleven months. Id. at ¶¶ 107, 110, 114.

---

5 The Second Amended Complaint avers that Defendant Washington County deprived Plaintiff Russell of his constitutional rights with respect to his other three children, as well as R.R. See doc no. 21 ¶¶ 127- 136. However, this Court's Opinion and Order applies to Plaintiff Russell's rights with respect to all of his children. The facts summarized by this Court will focus on R.R. because the majority of the facts set forth in the Second Amended Complaint describe the custody and juvenile proceedings involving R.R., and because R.R., through Plaintiff Aloma Blake, also avers his constitutional rights were violated.

R.R. remained in the custody of Washington County CYS until January 26, 2010 at which time a disposition hearing was held and Aloma Blake, R.R.'s paternal grandmother, was granted full legal custody of R.R. Id. at ¶¶ 121, 123. As of January 26, 2010, Plaintiff Russell was able to have regular contact with R.R., because Plaintiff Russell's mother, Aloma Blake, obtained full legal custody of R.R. Id. at ¶124.

Defendants' Brief in Support of its Motion to Dismiss the Second Amended Complaint challenges the veracity of some of the above facts, as well as other facts alleged in the Plaintiffs' Second Amended Complaint. To this end, Defendants attached numerous state court and CYS documents in an effort to persuade this Court of its version of the facts. See doc. nos. 23 and 23-1. This Court did not consider Defendants' version of the facts, nor the documents attached to the Defendant's Brief, for the purpose of deciding the Motion to Dismiss. Rather, this Court has assumed all facts alleged by Plaintiffs were and are true.

### III. Discussion

Section 1983 states that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. In Kneipp v. Tedder, the United States Court of Appeals for the Third Circuit explained that "[s]ection 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws" and held that "[i]n order to establish a section 1983 claim, a plaintiff must demonstrate a violation of a right secured by the Constitution and the

laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Kneipp, 95 F.3d 1199, 1204 (3d Cir.1996) (internal quotes and citations omitted).

More recently and specifically, in Crawford v. Washington County Children And Youth Services, the Court of Appeals for Third Circuit held, "[t]his circuit has recognized "constitutionally protected liberty interests that parents have in the custody, care and management of their children." Crawford, 353 Fed.Appx. 726, 730, (3d Cir. 2009), citing Croft v. Westmoreland County CYS, 103 F.3d 1123, 1125 (3d Cir.1997) (citing Lehr v. Robertson, 463 U.S. 248, 258, (1983)).

Although Plaintiff Robertson has a constitutionally protected interest to the custody, care and management of R.R., Washington County, a governmental agency, can only be liable under section 1983 if its officers either: (1) officially adopted an unconstitutional policy, custom or practice; or (2) if a governmental custom creates a constitutional deprivation. Studli v. Children & Youth and Families Central Regional Office, 346 Fed. Appx. 804 (3d Cir. 2009) (citing Monell v. Department of Social Services, 436 U.S. 658 at 694 (1978)). In addition, the Supreme Court in Monell held that local governmental agencies such as CYS may not be held liable under section 1983 solely on a theory of *respondeat superior*. The Court further explained that liability must be premised upon an "affirmative link" between the violation alleged and an act or decision fairly attributable to the policy-making employee. Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

While Plaintiffs' Second Amended Complaint (like its predecessors) provides ample factual detail concerning the underlying family court and juvenile court proceedings, as well as

8

the details relating to the involvement of various CYS employees, it is devoid of any allegations which describe an "officially adopted" and unconstitutional policy, custom, or practice of Washington County or CYS. Likewise, there are no allegations which aver that a governmental custom created the alleged constitutional deprivations.

Plaintiffs, in their Brief in Opposition to the instant motion, argue that Defendants, in their Brief in Support of the Motion to Dismiss the Second Amended Complaint, have admitted that "CYS failed to conduct its own independent investigation of R.R.'s [allegations of abuse]." Doc no. 24, pp. 4-5. Plaintiffs further explain that CYS was required to conduct such an independent investigation pursuant to Pennsylvania statutory law, specifically, 55 Pa. Code §3490.54. Id at p. 5.

Given these statements, Plaintiffs are, possibly, attempting to argue Washington County and/or its CYS agency has an unconstitutional policy, custom or practice of not conducting independent investigations as required by State law. However, allegations such as these are nowhere to be found in Plaintiffs' Second Amended Complaint and there are no facts pled in the Second Amended Complaint that support such allegations. Instead, Plaintiffs cull them together from Defendants' Brief in Support of its current Motion to Dismiss and Plaintiffs' Brief in Opposition.

As noted by the United States Court of Appeals for the First Circuit:

> "[T]he court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her. It is enough to view the basic complaint. In this instance the complaint failed to contain the allegations which plaintiff now wishes called to mind. Regardless of whether such might have merit – as to which we express no opinion – the court was within its discretion in refusing so-called reconsideration.

Pinto v. Universidad De Puerto Rico, 895 F.2d 18, 19 (1st Cir. 1990). See also, First Financial Bank v. CS Assets, LLC, 678 F.Supp.2d 1216, 1240, fn 35 (S.D.Ala. 2010).

In the instant matter, Plaintiffs have attempted to draft this Complaint on three separate occasions. The most recent version of the Complaint (the Second Amended Complaint) was submitted following an oral discussion during a case management conference wherein Plaintiffs were informed that their prior Complaints lacked the requisite allegations necessary to support a 1983 claim against a governmental agency. Because Plaintiffs' Second Amended Complaint fails to assert a legally cognizable claim against Washington County under Section 1983, this Court is constrained to grant the Defendants' Motion to Dismiss.

### IV. Conclusion

Based on the foregoing law an authority, the Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is granted. The pendant state law claims asserted against Defendant Chambers will be remanded to State Court.[6]

An appropriate Order follows.

                                                                 s/ Arthur J. Schwab
                                                                 United States District Judge

                                                                 December 9, 2010

cc:      All Registered ECF Counsel and Parties

---

[6] The state courts are intimately familiar and regularly adjudicate claims of this nature. Accordingly, said state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3), albeit without prejudice to Plaintiffs' ability to refile these claims in state court. Also, the dismissal of Plaintiffs' state law claims should not work to plaintiffs' disadvantage. See 28 U.S.C. § 1367(d) (providing for at least a thirty-day tolling of any applicable statute of limitation after the claim is dismissed so as to allow Plaintiffs time to refile their state law claims in state court).